COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Haley and Beales
Argued at Alexandria, Virginia


TERRICK D. BARNES

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2314-07-4                JUDGE RANDOLPH A. BEALES
                                                    DECEMBER 9, 2008
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                              Donald M. Haddock, Judge

              Kevin T. Gaynor, Assistant Public Defender, for appellant.

              Gregory W. Franklin, Assistant Attorney General (Robert F.
              McDonnell, Attorney General, on brief), for appellee.


       The trial court found Terrick Barnes (appellant) guilty of aggravated malicious wounding

and use of a firearm in the commission of aggravated malicious wounding.  Appellant challenges

the trial court's denial of his motions to suppress the victim's identification of him and to

suppress the fruits of a search of his residence.  Appellant also challenges the sufficiency of the

evidence supporting his convictions.  For the reasons that follow, we affirm.

                                    I. BACKGROUND

       At approximately 10:00 pm on June 12, 2006, Henry Carmon was shot at the corner of

East Bellefonte Avenue and Price Street in Alexandria.  Carmon described the assailant as "a

black male, in his 20's or 30's, 5 foot 4 inches to 5 foot 6 inches, very skinny with a mustache

that drooped down to his chin and he was wearing a white hooded shirt."  Carmon believed the

assailant lived in the neighborhood and knew his stepdaughter.  Based in large part on the

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

assistance of patrons at a restaurant in close proximity, appellant was apprehended nearby shortly after the shooting.

In the early morning hours following the shooting, after Carmon underwent three surgical procedures, Detective Hickman showed Carmon a photographic spread containing six photographs, including a 2002 booking photograph of appellant. Carmon failed to identify appellant's photograph. Police returned appellant to his residence at 1708 Price Street.

Four days later, after again speaking to Carmon and interviewing neighborhood witnesses, Detective Hickman obtained a search warrant for appellant's residence. The resulting search yielded a firearm with a loaded magazine hidden in the duct work in appellant's basement. Subsequent forensics testing indicated the bullet that struck Carmon and various shell casings at the scene were fired by the retrieved handgun. The police also recovered a white hooded sweatshirt from appellant's residence.

Appellant was charged with aggravated malicious wounding and use of a firearm in the commission of aggravated malicious wounding. A live lineup was held on May 23, 2007, more than eleven months after the shooting occurred. Carmon readily identified appellant as the assailant.

Appellant filed a pre-trial motion to suppress Carmon's out-of-court identification of him, contending the identification procedures were unduly suggestive and unreliable. In addition, appellant moved to suppress the evidence seized from the search, claiming Detective Hickman omitted potentially exculpatory evidence from the supporting affidavit. The trial court denied both motions.

Appellant argued at trial that the evidence was insufficient to prove both that he was the assailant and that Carmon suffered a permanent impairment from the shooting. Sitting without a jury, the trial court found appellant guilty on both charges.

## II. Analysis

### A. Suppression Motions

On review of the denial of a motion to suppress, this Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[.]" McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). However, this Court "review[s] *de novo* the trial court's application of legal standards to the particular facts of the case." Logan v. Commonwealth, 51 Va. App. 111, 114-15, 655 S.E.2d 30, 32 (2008) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

### 1. Identification

An out-of-court identification "'will be admitted if either (a) the identification was not unduly suggestive, or (b) the procedure was unduly suggestive, but the identification is nevertheless so reliable . . . that there is no substantial likelihood of misidentification.'" Miller v. Commonwealth, 7 Va. App. 367, 373, 373 S.E.2d 721, 724 (1988) (quoting Hill v. Commonwealth, 2 Va. App. 683, 693, 347 S.E.2d 913, 918 (1986)). Reviewing courts must look to the totality of the circumstances and consider several factors including the opportunity of the witness to view the criminal at the time of the incident, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness, and the length of time between the crime and the witness' opportunity to view and identify the alleged criminal. See Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

As recounted above, Carmon failed to identify appellant from a photospread hours after the shooting; however, nearly a year after the shooting, Carmon identified appellant from a live lineup. Appellant claims Carmon's out-of-court identification was tainted for several reasons. First, appellant claims that he was the only individual to appear in both the failed photospread and the subsequent live lineup eleven months later. Second, appellant points to Carmon's

testimony that he knew appellant had been arrested for the shooting, so he reasoned that appellant would be present in the live lineup. Third, appellant points to the fact that a person in the live lineup was larger than the other participants, including appellant. We find none of these reasons sufficiently persuasive to warrant suppression of Carmon's identification of appellant.

With respect to his first contention, appellant correctly asserts that he was the only individual to appear in both the failed photospread and the subsequent live lineup, at which Carmon identified him. However, the trial court found that the older booking photo from four years ago was "crummy" because appellant had changed in terms of hairstyle, facial hair, and skin color. Appellant fails to demonstrate on appeal that the trial court's finding was plainly wrong or without evidence to support it; therefore, we are bound by the trial court's finding of historical fact. See McGee, 25 Va. App. at 198, 487 S.E.2d at 261. Given the trial court's finding that the 2002 booking photo was "crummy," it logically follows that the court correctly found the 2002 booking photo did not taint the results of the May 2007 live lineup. Our finding is enhanced by the fact that the live lineup occurred nearly a year after the photospread occurred.[1]

Second, while Carmon did testify that he was informed that appellant had been charged in the shooting and that, therefore, he expected appellant to be in the live lineup, appellant's attempt to hold the Commonwealth responsible for Carmon's subjective expectations is

---

[1] Carmon testified at trial that he did not even recall Detective Hickman presenting him with a photospread at the hospital in the hours after the shooting, although he recalled speaking to Hickman. Upon being admitted to the emergency room during the early morning hours of June 13, 2006, Carmon received a full endoscopy, followed by a diverting colonostomy, and then had a bullet surgically removed from his hip joint. Detective Hickman testified that Carmon was "shaky" and "in obvious discomfort" when he presented Carmon with the photospread. Considering the evidence adduced at both the suppression hearing and the trial and viewing it in the light most favorable to the Commonwealth as the prevailing party below, see Blevins v. Commonwealth, 40 Va. App. 412, 420, 579 S.E.2d 658, 662 (2003), we find that Carmon's failure to recall the photospread provides an additional reason that the failed photospread did not taint the subsequent live lineup procedure.

misplaced.  Unremarkably, Carmon expected his suspected assailant to be in the lineup.  Most people assume a suspected perpetrator will be in a lineup.  See Messer v. Roberts, 74 F.3d 1009, 1017 (10th Cir. 1996) (remarking that "when the police present a physical lineup to eyewitnesses it is reasonable to assume the police have someone in custody who may be in the lineup"); United States v. Person, 478 F.2d 659, 661 (D.C. Cir. 1973) ("[T]he mere fact that suspects are included within the line-up, and that witnesses know or assume this to be the case, is an inescapable aspect of line-up identification procedure.").  If a lineup's results can be invalidated on the basis of what the victim subjectively assumes about the lineup, then almost every lineup can be invalidated on this basis.  Appellant must therefore present a more compelling reason for suppressing the identification than Carmon's expectations of the composition of the live lineup.

Neither Detective Hickman nor another police officer told Carmon that appellant, the suspected assailant, would be present in the live lineup.  "The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime."  Bryant v. Commonwealth, 10 Va. App. 421, 426, 393 S.E.2d 216, 219 (1990) (quoting Simmons v. United States, 390 U.S. 377, 383 (1968)).  Here, however, Detective Hickman instructed Carmon that the suspect would not necessarily be in the live lineup and that Carmon should not feel compelled to identify anyone.  Accordingly, we are confident that Carmon's subjective assumptions alone concerning the live lineup did not call into question the validity of the identification procedure.

Third, appellant's argument that another person in the lineup was so different in appearance from appellant that his presence infected the identification procedure stands established case law on its head.  "A valid lineup does not require that all the suspects or participants be alike in appearance and have the same description as long as nothing *singles the accused out* from the rest."  Taylor v. Commonwealth, 52 Va. App. 388,  392, 663 S.E.2d 536,

538 (2008) (quoting Hodges v. Commonwealth, 45 Va. App. 735, 774-75, 613 S.E.2d 834, 853 (2005), rev'd on other grounds, 272 Va. 418, 634 S.E.2d 680 (2006)) (emphasis added). One person in the live lineup was apparently larger than the others, but appellant was not that anomalous person. Although appellant correctly notes that Detective Hickman was hesitant to include the larger individual in the lineup, appellant misunderstands Hickman's reluctance: Hickman feared that Carmon would select the larger individual, seemingly standing out from the rest of the participants, rather than appellant. In denying appellant's motion to suppress this lineup, the trial court cogently noted the risk taken by Detective Hickman. Because that risk involved potentially singling out another person, and *not* appellant, we find no reason to invalidate the results of the live lineup on this basis.

In sum, we find the trial court correctly ruled that Carmon's out-of-court identification of appellant was not improperly influenced.[2]

## 2. SEARCH WARRANT

In Franks v. Delaware, 438 U.S. 154 (1978), the United States Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable

---

[2] Appellant also challenges Carmon's in-court identification of him. However, "even if evidence of the out-of-court identification cannot be admitted, an in-court identification may still be made if the origin of that identification is independent of the inadmissible out-of-court identification procedure." Hill v. Commonwealth, 2 Va. App. 683, 693, 347 S.E.2d 913, 918 (1986). Carmon testified that he recognized his assailant from the neighborhood, that he believed the assailant knew his stepdaughter and had visited her at his home in the past, and that the assailant had briefly encountered him earlier on the day of the shooting. We find that, regardless of Carmon's out-of-court identification, Carmon had an independent basis on which to make his subsequent in-court identification of the accused.

cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Id. at 155-56. The hearing on the motion to suppress in this case essentially included a Franks hearing, without any preliminary showing by Barnes. See West v. Commonwealth, 16 Va. App. 679, 689, 432 S.E.2d 730, 737 (1993).

Detective Hickman testified that he omitted all potentially exculpatory evidence from the search warrant affidavit for 1708 Price Street. He submitted the affidavit without including the potentially exculpatory evidence to the reviewing magistrate because, as a matter of practice, he never includes potentially exculpatory evidence in such affidavits. The trial court found that Hickman did not deliberately intend to deceive the magistrate. However, the court found that "the omissions were probably made in reckless disregard of whether they would mislead." Appellant satisfactorily demonstrated that Hickman's affidavit was made with reckless disregard for the truth.

We next consider whether Hickman's omissions negated the basis upon which the magistrate's probable cause determination was made. To satisfy the objective component of Franks, the information falsely provided or omitted by the affidavit must be essential to the probable cause determination. See United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990). "'[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing [pursuant to Franks] is required.'" Id. (quoting Franks, 438 U.S. at 171-72). We must apply the "totality of the circumstances" test of Illinois v. Gates, 462 U.S. 213 (1983), to determine whether Hickman's affidavit, considered together with the omitted information, would provide probable cause for a search warrant. See Colkley, 899 F.2d at 301. This test requires "a practical, common-sense decision whether, given all the circumstances set forth in

the affidavit," Gates, 462 U.S. at 238, it was "'reasonable to believe that the items to be seized w[ould] be found in the place to be searched,'" Adams v. Commonwealth, 48 Va. App. 737, 750, 635 S.E.2d 20, 26 (2006) (quoting United States v. Lalor, 996 F.2d 1578, 1582 (1993)).

Detective Hickman's supporting affidavit contained the following material facts compiled both at the time of the offense and in the four days between the shooting and the presentation of the search warrant application to the magistrate.

Carmon told officers responding to the shooting that he had seen his assailant around the neighborhood prior to the shooting. Alexandria police officers reported to Hickman that an individual later identified as appellant arrived at the crime scene shortly after their arrival asking what happened. Officer Sandoval reported that restaurant patrons sitting outside at the nearby intersection of Mt. Vernon and East Howell Avenues observed an African-American male walking back and forth along the sidewalk. The restaurant patrons heard gunshots two or three minutes later, and a short time after that they observed the same man walking along the sidewalk and crouching in an effort to conceal himself when he heard voices. Acting on the patrons' tip, Officer Sandoval took appellant – the crouching individual – into custody. Appellant was wearing a white hooded sweatshirt.

Appellant was taken to the police station for questioning. Appellant told the police that he drove a black Ford Crown Victoria and a Chevrolet Caprice station wagon. Appellant stated that he resided at 1708 Price Street, that his nickname was "Turkey," and that he stood 5 feet, 7 inches in height and weighed 135 pounds.

Detective Hickman later interviewed two Price Street residents. The first resident had been awakened by the sounds of gunshots on the night of June 12 and observed an African-American male walking south on Price Street with his hand over his head approximately two minutes after the gunshots sounded. This resident went outside as police cars began to arrive and

observed the same African-American male then walking north on Price Street, cursing under his breath. The man identified appellant from the photospread as the person he saw that night. The resident did not know appellant's name but referred Hickman to a neighbor whom the man claimed did know appellant's name. The neighbor, who had seen appellant walking down Price Street that night after the shots were fired, knew appellant as "Turk." She told Hickman that "Turk" lived near the alley on Price Street. Hickman noted that appellant's residence, 1708 Price Street, was two houses down from the alley. The neighbor also identified appellant from the photospread.

In subsequent conversations with Detective Hickman, Carmon stated that his assailant shot him and then walked south on Price Street. Carmon did not know the assailant's name but knew he lived on Price Street and drove a big black car and a station wagon with wood paneling. Carmon described the assailant as an African-American male in his twenties or thirties, very skinny, and between 5 feet, 4 inches and 5 feet, 6 inches in height.

Appellant contends that Detective Hickman's affidavit omitted the following allegedly material evidence: Carmon failed to identify appellant from the photospread; Carmon smoked cocaine prior to the shooting; a witness, Lisbeth Lyons, stated she was "not sure" the man depicted in appellant's 2002 booking photo was the person that she saw leave the crime scene; the restaurant patrons who identified appellant told police that appellant appeared to be concealing himself from someone in a truck rather than from the police; one or more female witnesses had identified someone larger than appellant as the perpetrator; and, on the night of June 12, police had stopped another man, Emory Harrington, in the vicinity of the crime scene, because Harrington matched the description of the shooter and wore a white shirt.

The trial court addressed these omissions in turn. Focusing most intently on Carmon's inability to identify appellant in the photographic spread, the court found that this omission did

not negate the probable cause determination. The court characterized the remaining factors as "largely just fringe issues."[3] We agree with the trial court's characterization and, ultimately, agree that Carmon's inability to identify appellant from the photographic spread does not negate the probable cause determination under the principles set forth in Franks and its progeny.

The court found that Carmon's inability to identify appellant from the photospread was because the 2002 booking photo was "crummy," not because Carmon could not identify appellant. As we discuss above, appellant fails to demonstrate that the trial court's factual finding concerning the poor resemblance of the 2002 booking photo to appellant's June 2006 appearance was plainly wrong or without evidence to support it; therefore, we will not disturb that finding. Given the poor quality and age of this old photo, mention of Carmon's failure to identify appellant in the photospread would not have affected the magistrate's probable cause determination. Even if we concluded that omission of this fact *may* have affected the probable cause determination, such a conclusion still would be insufficient to negate probable cause under the Franks test. See Colkley, 897 F.2d at 301-02; see also Franks, 438 U.S. at 156.

In a final attempt to negate the magistrate's probable cause finding, appellant refers to Detective Hoffmaster's belief on the night of the shooting that he would need appellant's consent to search 1708 Price Street, when appellant refused consent to a search. Appellant argues that Hoffmaster's belief demonstrates that the magistrate would not have approved the search warrant

---

[3] With respect to Carmon's drug use, the court found no evidence indicated "that his smoking of cocaine, in any way, affected his ability to identify or recognize and report." The court found Lyons's inability to identify appellant from the photospread was "neither a plus nor a minus" and not exculpatory, because Lyons answered "Not Sure" rather than "No." The court found that the speculative reason for appellant to conceal himself was immaterial to the probable cause determination, because appellant's attempt to conceal himself was the real issue. The court found that some witnesses' belief that the assailant was larger than appellant was not "necessarily exculpatory in any true sense." Finally, the court remarked it could not find the omission of the fact that police had briefly stopped Harrington shortly after the shooting negated probable cause when no evidence was presented on why this detail was omitted from the affidavit.

had Detective Hickman included the allegedly exculpatory information in his affidavit. As the trial court found, however, Hoffmaster's opinion on that night had no bearing on the probable cause determination, which was based largely on information gleaned in the four days following the shooting. In those intervening days, Hickman learned that Carmon could identify the automobiles appellant admitted he drove and that a neighbor knew appellant's nickname (or a close variant thereof). Hickman also spoke with neighbors who recognized appellant as the man who walked on Price Street shortly after the shooting, identified appellant from a photographic spread, and indicated that appellant lived at about 1708 Price Street.

The omitted information does not rise to a level where our confidence in the probable cause determination is shaken. Therefore, we find that the trial court committed no error in denying appellant's suppression motion.

## B. SUFFICIENCY OF THE EVIDENCE

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

### 1. WHETHER APPELLANT WAS ASSAILANT

Appellant argues that the evidence was insufficient to prove that he was Carmon's assailant. Although appellant contends that some witnesses could not positively identify appellant or indicated appellant was not the assailant, because the Commonwealth prevailed in the trial court, a reviewing appellate court "must 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954)). Here, ample credible evidence placed appellant in close proximity to the crime scene both immediately before and after the shooting. Carmon, the victim, testified that he knew the assailant from his neighborhood and had seen the assailant earlier that day, when the assailant accused Carmon of "know[ing] what you did." Carmon believed the assailant went to school with his stepdaughter and had even visited Carmon's house in the past. Although he could not identify appellant from the photospread that he was shown when he was recovering from surgery in the hospital for the gunshot wound he received, Carmon positively identified Barnes as the assailant at the live lineup and at trial. Carmon's identification was reinforced by the Price Street resident's observation that she saw "Turk" walk by her house on Price Street after she heard the shots and by the restaurant patrons' tip that appellant was the man concealing himself from onlookers.

Appellant also argues that certain physical evidence created uncertainty over whether he was the assailant. For instance, the Commonwealth's gunshot residue expert found only one particle of primer residue on appellant's right hand, and latent fingerprints retrieved from the

firearm matched Carl Edward Barnes, not appellant.[4]  However, it was within the province of the factfinder to weigh the evidence.  Thus, the trial court could determine that one particle of primer was significant, or irrelevant to guilt or innocence.  Viewing the evidence in the light most favorable to the Commonwealth, a rational finder of fact could determine that, notwithstanding Carl Barnes's fingerprint on the firearm, appellant was present at the crime scene and fired the weapon, even though his prints were not on the weapon.

When the totality of the evidence is considered, the evidence was sufficient for the trial court to find appellant was the perpetrator here.

### 2.  WHETHER VICTIM WAS PERMANENTLY AND SIGNIFICANTLY IMPAIRED

Appellant also argues that the evidence was insufficient to demonstrate that Carmon was permanently and significantly impaired as a result of the wounding, a required element of an aggravated malicious wounding offense.  See Code § 18.2-51.2 (aggravated malicious wounding occurs when a person "maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill . . . if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment").  Appellant argues the trial court erred in not reducing the aggravated malicious wounding under Code § 18.2-51.2 to "simple" malicious wounding under Code § 18.2-51.  Furthermore, because a conviction under Code § 18.2-53.1 punishes the use of a firearm in the commission of aggravated malicious wounding, appellant argues his conviction under that code section was improper as well.

For the purpose of Code § 18.2-51.2, a "physical impairment" is "'any physical condition, anatomic loss, or cosmetic disfigurement which is caused by bodily injury, birth

---

[4] Furthermore, the Commonwealth proffered that Carl Barnes was 5 feet, 11 inches in height – significantly taller than appellant.

defect, or illness.'" Martinez v. Commonwealth, 42 Va. App. 9, 24, 590 S.E.2d 57, 64 (2003) (quoting Newton v. Commonwealth, 21 Va. App. 86, 90, 462 S.E.2d 117, 119 (1995)). Here, Dr. Seoudi, who treated Carmon on the night of the shooting and for weeks thereafter, testified that the impact of the bullet on Carmon's left hip joint resulted in traumatic arthritis, which can cause constant pain and limitations in range of motion. The traumatic arthritis manifested itself in Carmon's inability to walk as fast or as far as he could before the shooting, as well as his inability to sleep well owing to leg pain from his injuries. Dr. Seoudi testified that a complete recovery was unlikely, especially if it had not already occurred. Furthermore, Dr. Seoudi testified that Carmon had internal and external abdominal scarring that was permanent and faced the potential for a bowel obstruction as a result of his injuries. Based on the testimony of Dr. Seoudi and the victim, we find that Carmon suffered a severe injury causing permanent and significant physical impairment.

Accordingly, the evidence was sufficient to support appellant's convictions for aggravated malicious wounding and use of a firearm in the commission of aggravated malicious wounding.

### III. CONCLUSION

For the foregoing reasons, we affirm appellant's convictions.

Affirmed.