## Richmond

### DENNIS WAYNE BRYANT

v.

### COMMONWEALTH OF VIRGINIA

No. 0717-87-2

Decided June 5, 1990

COUNSEL

R. Wayne Dawson, for appellant.

John H. McLees, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General; Mildred B. Cain, Assistant Attorney General, on brief), for appellee.

OPINION

BENTON, J.—Dennis Wayne Bryant seeks reversal of his convictions of breaking and entering with intent to abduct and abduction. Bryant argues that the victim's identification testimony should have been suppressed because it was based on an unnecessarily suggestive pre-trial photographic identification. We conclude that the victim's photographic identification possessed independent features of reliability sufficient to overcome the corrupting effect of the suggestive identification procedure. We therefore affirm the convictions.

■ We view the evidence in the light most favorable to the Commonwealth, as we are required to do following a conviction. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The record establishes that the victim, an eight

year old child, was home alone with her twelve year old sister on a November evening while both parents were at work. The younger child had fallen asleep in a chair in the living room around 11:00 p.m. while watching television. She awoke to find herself in the arms of a man who was carrying her outside her apartment toward the north end of the building. The child screamed and was able to struggle free as they went around the building. She ran back to her apartment and woke her sister, who telephoned their mother. The police department service log for that evening noted that the mother reported the incident at 1:15 a.m. The perpetrator was described on the service log as: "W/M dk. hair mustache."

Officer Lindsey was sent to the apartment and informed by the dispatcher that the perpetrator was "a white male with slick, brown hair and a mustache, wearing a blue coat." When Lindsey arrived, the child already had drawn a picture of the perpetrator. On the drawing, the child had labeled his hair "brown," and his shirt and pants "blue." She explained to Lindsey that the man had "smooth" brown hair and that he was wearing a blue jacket. Asked to describe the blue of the jacket, she stated that it was a dark blue. Noting that the child had not drawn a nose or mouth on the picture, Lindsey asked her whether the man had any facial hair, such as a beard or mustache. The child responded that he had a mustache. She also said that he had been wearing blue jeans. Lindsey testified that as they were going over the details of the event and looking at the drawing, the child told him that the man once worked at the Farm Fresh store across the street from her apartment building.

At 11:50 that night, Officer Smith had responded to a prowler call from someone who lived in the same apartment building. Smith observed Bryant walking from the north end of the apartment building to the south end. Bryant was attired in a dark jacket, green pants and shirt. Smith testified that when he approached Bryant, he noticed that Bryant was unsteady on his feet and had an odor of alcohol about him. According to Smith, Bryant was somewhat evasive in his answers but provided his name and an explanation that he was walking home from a neighborhood restaurant. Smith placed Bryant under arrest for being drunk in public and transported Bryant to the Public Safety Building.

Police communications informed Lindsey by telephone that a man fitting the child's description of the perpetrator had been arrested behind the apartment building at approximately 11:50 that evening. Lindsey testified that the child was in another room when this telephone conversation took place. Following that communication, Smith arrived at the apartment and informed Lindsey that he had three photographs of the man he had arrested. Smith testified that the family was in another room when he spoke with Lindsey. Lindsey then asked the child to come sit at the table and look at the photographs. Both officers testified that she immediately recognized the man in the photographs as the perpetrator.

At the suppression hearing, the child testified that the perpetrator had light brown hair "waved over" to one side, and that he was wearing a blue jacket and blue pants. She gave a similar description at trial and identified Bryant in court as the perpetrator. The child also testified that she was able to see Bryant's face on the night in question by the light emitted from fixtures on the exterior of her apartment building and from fixtures across the street at the Farm Fresh parking lot. She further testified that she had seen Bryant before and that he worked at the Farm Fresh store. Evidence was introduced showing that Bryant worked in the Farm Fresh produce department from June through September.

Contrary to the testimony of Lindsey and Smith, the child testified that on the night of the incident she had overheard the officers talking about Bryant's arrest in the area. She also stated with some equivocation that before she viewed the photographs she knew they were of the man arrested. In response to a question from the trial judge, however, the child stated that she would have been able to identify the perpetrator, even if she had not seen the pictures.

■ In *Manson v. Brathwaite*, 432 U.S. 98 (1977), the Supreme Court followed the rule of *Neil v. Biggers*, 409 U.S. 188 (1972), that "admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." 432 U.S. at 106. Under *Biggers*, the reliability of the identification is to be judged according to the totality of the circumstances. 409 U.S. at 199. Factors to consider in assessing the reliability of the identification include:

[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [the witness'] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Brathwaite*, 432 U.S. at 114.

Bryant argues that the display of only his photographs to a child of eight for identification was so impermissibly suggestive that it requires a *per se* rule of exclusion. In lieu of such a *per se* rule, Bryant suggests that we adopt a rebuttable presumption of unreliability in such cases, requiring the Commonwealth to come forward with a showing that a reliable ground exists for crediting the child's identification. Bryant cites no case law in support of his position. We note that in *Brathwaite*, the Supreme Court considered and rejected a *per se* rule of exclusion in favor of an *ad hoc* approach with respect to admissibility of identification testimony. *Id*. at 111-13. We believe that the test articulated in *Brathwaite* is broad enough to account for the degree of suggestibility of the individual child witness without exacting the undesirable toll of exclusion of potentially reliable evidence from consideration by the trier of fact. The witness' youthfulness is obviously a factor to be considered under the *Brathwaite* totality of circumstances test.

We agree with Bryant that the procedure employed by the police in procuring the child's identification was unnecessarily suggestive. Although there is no indication in the record that suggestive comments were made to the child, the identification was not made "in circumstances allowing care and reflection." *Id*. at 116. She was shown an array of three color photographs featuring only Bryant. According to the child's testimony, she was aware before viewing the photos that the man in the photographs had recently been arrested in the proximity of her apartment building. Circumstances such as these have been criticized in other cases.

[The] danger [of misidentification] will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the picture of several persons among which the photograph of a single such individual recurs or is in some

way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime.

*Simmons v. United States*, 390 U.S. 377, 383 (1968) (footnote omitted). It is also apparent that a certain amount of coerciveness was inherent in the circumstances in which the child was asked to make the identification — she viewed the photographs only briefly while in the company of two uniformed police officers and both her parents. These circumstances lead inescapably to the conclusion that the child's viewing of the photographs occurred under unnecessarily suggestive influences.

Although the Commonwealth argues that the single subject photographic array was necessary because photographs of other individuals were unavailable to the officers at that hour, the testimony establishes that the supervisor who maintained the police photograph files was on call. Certainly, if an exigency existed which required an immediate identification of Bryant, the supervisor could have been called to open the photograph files. It should also be obvious that the camera which was used to photograph Bryant could have been used to create an array. Moreover, Bryant was already in custody on other charges and could have participated in a lineup or a suitable array could have been made available the following day. The likelihood of memory loss was not great because the child had already informed her parents and the police that she knew the perpetrator.

Despite the corrupting effects of the suggestive identification procedure, however, we conclude that the evidence supports the trial judge's finding that there was ample independent evidence to establish that the child's out-of-court identification was reliable. The trial judge found that the lighting conditions were sufficient to allow the child ample opportunity to view the face of her abductor. In addition, the trial judge also found that the child's degree of attention was particularly acute because her attention "was riveted . . . on the person who was carrying her in his arms." The child's drawing manifested her attention to detail. The child's description of the perpetrator prior to viewing the photographs was remarkably accurate. Indeed, the accuracy of the child's description in large measure enabled the police to act on

the description in obtaining the photographs of Bryant.

Significantly, Lindsey testified that the child stated before seeing the photographs that she had seen the man before and that he worked at the Farm Fresh across the street. This evidence links Bryant to the incident and is untainted by the subsequent suggestive identification procedure. Bryant does not dispute that he worked at the Farm Fresh until two months prior to this incident. As the trial judge noted, the child's ability to recognize Bryant as the person who carried her in his arms was strengthened by the fact that she had seen him on prior occasions. When shown the photographs, the child immediately identified the subject of the photographs as the man who had abducted her and also as the man she had seen on previous occasions at the Farm Fresh. Finally, the photographic identification took place approximately two hours after the crime occurred, when the events of the evening were fresh in the victim's memory.

The trial judge conducted a careful review of the facts of this case as they related to the *Brathwaite* criteria. We conclude that the child's identification of Bryant possessed independent features of reliability sufficient to overcome the corrupting effect of the suggestive identification procedure. Because the admission of the evidence did not violate due process by giving rise to a "very substantial likelihood of irreparable identification," the weight to be attributed to the evidence was for the jury to decide. *Brathwaite*, 432 U.S. at 116. The jury "had the right to accept the evidence of one witness and to reject that of the defendant." *Ford v. Commonwealth*, 177 Va. 889, 892, 15 S.E.2d 50, 52 (1941). Moreover, "[t]he uncorroborated testimony of one witness may be sufficient to sustain a verdict of guilty." *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983), *cert. denied*, 465 U.S. 1028 (1984). Accordingly, the judgments of conviction are affirmed.

*Affirmed.*

Barrow, J., and Cole, J., concurred.