COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Benton and Elder
Argued at Richmond, Virginia

JESSE LEE BOLIN

MEMORANDUM OPINION[*] BY
v.  Record No. 0954-94-2        CHIEF JUDGE NORMAN K. MOON
                                     AUGUST 29, 1995
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Thomas V. Warren, Judge

John L. Squires, III, for appellant.

Margaret Ann B. Walker, Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief) for appellee.


Jesse Lee Bolin appeals from his conviction for driving
under the influence of alcohol in violation of Code § 18.2-266.
Bolin contends that the trial judge erred in refusing to suppress
a certificate of breath analysis and statements Bolin made to
police prior to his arrest.  We affirm the conviction.

The evidence proved that State Police Trooper J.A. Olinger
received a radio call at 10:35 p.m. reporting an automobile
accident in Powhatan County.  When she arrived at the scene, the
officer found an automobile in a ditch by the side of the road.
Bolin's mother testified that Bolin arrived home that evening and
told his parents that he had been in an automobile accident.  His
parents left to retrieve the automobile and discovered a number
of police at the scene.  Bolin's father remained at the accident

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

site, and his mother returned home.

Later, two uniformed deputy sheriffs arrived with Bolin's father to their home. Bolin testified that he was told by the deputies to accompany them to the accident scene and that he believed that he was not free to refuse the deputies' demand. His mother testified that Bolin was asked to accompany the deputies and that he complied. Bolin was not handcuffed and was transported in the rear of the deputies' vehicle to the accident site.

Trooper Olinger testified that when Bolin arrived at the accident site, his eyes were bloodshot and glassy, he smelled of alcohol, and he stumbled out of the vehicle. The officer asked Bolin if he had been driving the automobile at the time of the accident, what time the accident occurred, and whether he had consumed any alcohol before or after the accident. The officer testified that Bolin had admitted that he was driving the automobile at the time of the accident, that the accident had occurred thirty minutes prior to his return, and that he had consumed one beer before and none after the accident. After Bolin poorly performed several field sobriety tests, the officer arrested Bolin at 11:55 p.m. and advised him of his rights. Bolin took a breath test at 1:10 a.m.

Bolin argues that the trial judge erred in refusing to suppress the certificate of blood analysis and his statements because he was in custody and had not been given Miranda warnings

- 2 -

at the time he was interrogated.  Furthermore, Bolin argues that the trial judge erroneously based his ruling on the officer's subjective belief that Bolin was free to leave up until the time he was arrested.

When a suspect is subjected to "custodial interrogation," Miranda warnings are required.  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  Id.  "The totality of circumstances must be considered in determining whether the suspect is in custody when questioned, but the 'ultimate inquiry is simply "whether there is a formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'"  Wass v. Commonwealth, 5 Va. App. 27, 32, 359 S.E.2d 836, 839 (1987) (citations omitted).

The judge believed the mother's testimony that Bolin was asked to accompany the police officers to the accident site.  "The [fact finder] 'had the right to accept the evidence of one witness and to reject that of the defendant.'"  Bryant v. Commonwealth, 10 Va. App. 421, 427, 393 S.E.2d 216, 220 (1990) (citation omitted).  Bolin was also not restrained in any manner.  Thus, there is no evidence that Bolin's freedom of action was restricted in any way.  He voluntarily went to the accident scene with the two deputies.  See Nash v. Commonwealth, 12 Va. App.

550, 553, 404 S.E.2d 743, 744 (1991).

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited.

Oregon v. Mathiason, 429 U.S. 492, 495 (1977).

"[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, ___ U.S. ___, ___, 114 S. Ct. 1526, 1529 (1994). The officer testified that when Bolin had arrived on the scene, she had not focused her investigation on him. She believed that he was free to leave up until the time she arrested him at 11:55 p.m. However, the officer testified that she did not communicate this belief to Bolin. The objective facts in this record that the trial judge believed support a finding that Bolin was not in custody until his arrest. Thus, we hold that the trial judge did not err in refusing to suppress as evidence Bolin's statements and the certificate of analysis.

Because Bolin's statements were properly admitted, we need not address his argument that the Commonwealth could not prove

that Bolin was arrested within two hours of his offense pursuant to Code § 18.2-268.2(A).  Thus, we affirm his conviction.

<u>Affirmed</u>.

BENTON, J., dissenting.

The objective facts prove that two uniformed deputies employed by the sheriff's department who were at the scene of the automobile accident arrived at Jesse Lee Bolin's residence with Bolin's father. The statement of facts recites that Bolin testified "[h]e was told by the deputies to accompany them to the accident scene." The statement of facts also recites that Bolin's mother testified that "[t]he deputies asked [Bolin] to accompany them to the accident scene . . . [and Bolin] complied."

In ruling that Jesse Lee Bolin was not subjected to custodial interrogation after he arrived at the accident site, the trial judge relied, in part, upon "the testimony that Trooper Olinger had not 'focussed' her investigation upon . . . [Bolin] when he arrived at the accident scene and the testimony that Trooper Olinger believed that . . . [Bolin] was free to leave the scene at any time . . . [until] she placed . . . [Bolin] under arrest." However, in Stansbury v. California, ___ U.S. ___, ___, 114 S. Ct. 1526, 1529 (1994), the United States Supreme Court reaffirmed its previous holdings and ruled that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." As particularly pertinent to this case, the Court noted "that any inquiry into whether the interrogating officers have focused their suspicions upon the individual being

- 7 -

questioned . . . is not relevant for purposes of <u>Miranda</u>."  <u>Id.</u> at ___, 114 S. Ct. at 1530.

Because the record contains objective facts that tend to prove Bolin was in custody and because the trial judge erred in considering subjective factors in deciding that Bolin was not subjected to custodial interrogation, I would reverse the conviction and remand the suppression motion to the trial judge for reconsideration.