UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Decker, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia


WESLEY CARLTON SMITH

MEMORANDUM OPINION* BY
v.        Record No. 1938-15-2        JUDGE MARY BENNETT MALVEAUX
DECEMBER 19, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

Julia B. Dillon (Law Office of Julia B. Dillon, PLLC, on brief), for
appellant.

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Wesley Carlton Smith ("appellant") was convicted of two counts of robbery, in violation of

Code § 18.2-58, and one count of conspiracy to commit robbery, in violation of Code §§ 18.2-22

and -58.[1]  On appeal, appellant argues that the trial court erred in denying his motion to suppress an

out-of-court identification of him.  Appellant further argues that the evidence was insufficient to

sustain one of his robbery convictions where there was no evidence of an actual taking of property

from the person that accompanied the violence.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was also indicted for first-degree murder, in violation of Code § 18.2-32,
conspiracy to commit murder, in violation of Code §§ 18.2-22 and -32, and use of a firearm in
the commission of a felony, in violation of Code § 18.2-53.1.  Following presentation of the
Commonwealth's evidence, the trial court sustained appellant's motion to strike the conspiracy
to commit murder charge.  The jury acquitted appellant of murder and use of firearm in the
commission of a felony.

## I. BACKGROUND

### The Robbery

On the evening of November 23, 2013, Lorenzo Jones, III drove his BMW to Fredericksburg from Richmond. Diontae Washington accompanied him. Jones and Washington stopped at the Olde Forge apartment complex to see Washington's cousin, appellant. John Pegram was also in the apartment. They agreed to "catch a lick," a slang phrase meaning to commit a robbery.

The four men traveled to a nightclub in Jones' BMW. In the nightclub's parking lot, appellant saw Rodney Beanum and asked Jones to follow Beanum. Jones followed the vehicle Beanum was driving, a white Scion, for about ten minutes to the Mayfield neighborhood in Fredericksburg, at which point appellant told Jones to pull up beside Beanum's car.

Delante White and Travon Thomas were riding with Beanum in his car. Thomas was in the front passenger seat, and White was in the backseat. Upon leaving the nightclub, they drove to Thomas' house, where Thomas exited the car. White then got into the front passenger seat.

Once Jones' vehicle had pulled up beside the white Scion, appellant got out of the BMW and went up to Beanum's vehicle. Appellant pulled a gun from his waist as he opened Beanum's door and told him to "get on the floor." Washington and Pegram, both armed with guns, also got out of the BMW. They went over to White, opened the passenger side door, and told him to get out of the car and "get on the floor." Washington and Pegram told White to empty his pockets and took money from him. One of the men struck White in the head with a pistol and he fell to the ground. Both men started kicking him. They asked White where his cell phone was, and when White answered it was inside the car, Pegram started "ransacking" the car.

On the other side of the car, appellant was heard telling Beanum "I told you don't." White heard a gunshot and then heard Beanum yell. Washington and Pegram, still on the

passenger side of the car, "started panicking." White heard another gunshot, and subsequently got off the ground and ran up a sidewalk. White then heard at least five to eight more gunshots. White did not hear Beanum say anything after his initial yell. White eventually returned that night to Thomas' house.

Appellant, Washington, and Pegram got back into Jones' car and drove off. Jones parked the car, removed his Tennessee license plate from the vehicle, and threw it into a nearby bush.

When police arrived at the scene, they found Beanum's lifeless body lying face down next to the driver's side door of the Scion. The deceased had sustained eight gunshot wounds to his head and three in his torso. Police also noticed that the Scion had a "piece of molding" attached to the trunk with "Hello Kitty"-branded duct tape.

A few weeks later, on December 4, 2014, police discovered Jones' Tennessee license plate, White's iPhone, a roll of "Hello Kitty"-branded duct tape, a pistol, a knit cap, an iPhone charger, a firearm magazine, and a nine millimeter bullet round all located together in the Mayfield neighborhood. Appellant could not be eliminated as a contributor to the DNA profile developed from a hair recovered from the knit cap.

White's Identification of Appellant

On the morning of November 24, 2013, hours after the robbery, White went to the Fredericksburg Police Department. White told Detective Wayne Hunnicutt that there were four individuals involved in the robbery the previous night and that he had never seen any of them before. White was only able to give a general description of the individuals involved.

White was charged with obstruction of justice. Detective Hunnicutt testified at the preliminary hearing that he charged White with obstruction of justice because his "supervisor forced [him] to do so." However, he later testified at the suppression hearing that White was charged with obstruction of justice for "several reasons," including the fact that White initially

told Hunnicutt that he hid beside a red barn for six hours after Beanum was killed, which police questioned because of the cold temperature that night. White eventually told Hunnicutt that he was at Thomas' house.

Detective Hunnicutt interviewed White three more times, on December 2, 7, and 12. Hunnicutt showed White photo lineups on each occasion. Pursuant to department policy, each time he showed White six photographs contained in ten folders. The police department followed this policy to ensure that when a witness was opening a folder, investigators would not know which picture the witness was looking at and thus could not "subtl[y] hint" as to whom they were trying to identify.

Appellant's photo was not included in the first two lineups. On December 12, appellant's image was included in the photo lineup, and White identified appellant, indicating that he was fifty or sixty percent sure that appellant was involved in the incident.

White's obstruction of justice charge was dismissed a few weeks after his identification of appellant on December 12.

Prior to trial, appellant moved to suppress White's out-of-court identification of him. At a hearing on the motion, appellant argued that White's identification in the photo lineup was unduly suggestive because White was facing criminal charges at the time. White testified at the hearing that he did not think he had to make an identification to have his obstruction charge dismissed.[2] At the conclusion of the hearing, the trial court ruled that the photo lineup was not unduly suggestive and denied the motion to suppress. The trial court specifically relied on White's testimony that he did not feel pressure from law enforcement to identify someone in order to have his obstruction charge dismissed.

_____

[2] At trial, White testified in a similar manner, stating that he did not make the identification out of concern that he would be prosecuted if he did not identify someone.

- 4 -

Following a three-day jury trial, the jury convicted appellant of both counts of robbery and conspiracy to commit robbery.

## II.  ANALYSIS

### Motion to Suppress Out-of-Court Identification

On appeal, appellant argues that the trial court erred in denying the motion to suppress the out-of-court identification because White was pressured by law enforcement to make an identification.

On review of the denial of a motion to suppress, this Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).  However, this Court "review[s] *de novo* the trial court's application of legal standards to the particular facts of the case." Logan v. Commonwealth, 51 Va. App. 111, 114-15, 655 S.E.2d 30, 32 (2008).

Our Court utilizes a two-part analysis to determine the admissibility of an identification. An out-of-court identification "will be admitted if either (a) the identification was not unduly suggestive, or (b) the procedure was unduly suggestive, but the identification is nevertheless so reliable . . . that there is no substantial likelihood of misidentification." Miller v. Commonwealth, 7 Va. App. 367, 373, 373 S.E.2d 721, 724 (1988) (quoting Hill v. Commonwealth, 2 Va. App. 683, 693, 347 S.E.2d 913, 918 (1986)).

The burden is on a defendant to "establish that the photographic lineup procedure was impermissibly suggestive." Winston v. Commonwealth, 268 Va. 564, 593-94, 604 S.E.2d 21, 38 (2004) (quoting United States v. Wilkerson, 84 F.3d 692, 695 (4th Cir. 1996)).  Absent evidence of a process so suggestive as to "giv[e] rise to a 'very substantial likelihood of irreparable [mis]identification,'" the identification evidence is admissible, and "the weight to be attributed to

the evidence [is] for the [fact finder] to decide." Bryant v. Commonwealth, 10 Va. App. 421, 427, 393 S.E.2d 216, 220 (1990) (quoting Manson v. Brathwaite, 432 U.S. 98, 116 (1977)).

On appeal, appellant contends that White's obstruction of justice charge and multiple interviews with law enforcement amounted to pressure and undue influence which created an unduly suggestive photo lineup.[3]

Appellant contends that White's pending obstruction of justice charge pressured him to make an identification, rendering the photo lineup unduly suggestive. This argument is without merit. White himself testified at the suppression hearing that he did not feel coerced to identify a suspect because of the obstruction of justice charge, and the court relied on this testimony in making its determination. The conclusion that the photo lineup was not unduly suggestive is also clear from White's identification itself—White only stated that he was somewhat certain of his identification of appellant, and never definitively pointed to appellant as the perpetrator in order to relieve himself of the obstruction of justice charge.

Additionally, appellant claims that the multiple interviews created pressure on White to make an identification, thus contributing to an unduly suggestive photo lineup. White was interviewed four times by law enforcement, and at three interviews was shown photo lineups. White was only shown appellant's photo at the third photo lineup, at which point he made an identification of appellant. We do not find the four interviews were an attempt to pressure White to make an identification, as appellant's photograph was only included in the final photo lineup

---

[3] We consider appellant's argument on appeal solely as a challenge to the photo lineup as unduly suggestive. We look to the reliability of an identification only after determining that the lineup procedure was unduly suggestive. See Perry v. New Hampshire, 565 U.S. 228, 248 (2012) (holding that due process "does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement"). Therefore, on appeal, we do not examine the reliability of White's identification because the trial court determined, in the first step of the admissibility analysis, that the lineup was not unduly suggestive; thus, the court had no need to consider whether White's identification was nevertheless reliable.

after police identified him as a suspect. It is reasonable to conclude that White, as the sole surviving victim of a robbery, would be interviewed by law enforcement as their investigation developed and they found suspects that White could potentially identify.

In the instant case, White was shown six photographs contained in ten folders, pursuant to police policy. The photo lineup was designed this way to ensure that investigators would not be able to tell what particular photograph an eyewitness was viewing. White was shown two photo lineups which did not include appellant's photo. The third time he was shown a photo lineup, appellant's picture was included, and White was able to identify him with fifty to sixty percent certainty. This procedure itself was designed to prevent police from suggesting any particular suspect to an eyewitness, and the way that it was applied to White was not unduly suggestive.

Based on the record before us, we cannot say that the out-of-court identification was unduly suggestive. Therefore, the trial court did not err in denying appellant's motion to suppress White's out-of-court identification.

## Sufficiency of the Evidence

Appellant also alleges that the trial court erred in denying his motion to strike the evidence of the robbery of Rodney Beanum because there was no evidence of an actual taking of property from Beanum's person that accompanied the violence.

When considering the sufficiency of the evidence on appeal of a criminal conviction, "we review the evidence in the 'light most favorable' to the Commonwealth." Pryor v. Commonwealth, 48 Va. App. 1, 4, 628 S.E.2d 47, 48 (2006) (quoting Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences to be drawn therefrom.'" Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis omitted)). "The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." Clark v. Commonwealth, 30 Va. App. 406, 410, 517 S.E.2d 260, 261 (1999) (quoting Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988)).

"In Virginia, robbery is a common law crime proscribed statutorily by Code § 18.2-58 and defined as the 'taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" Anderson v. Commonwealth, 52 Va. App. 501, 506, 664 S.E.2d 514, 517 (2008) (emphasis omitted) (quoting Jay v. Commonwealth, 275 Va. 510, 524, 659 S.E.2d 311, 319 (2008)), aff'd, 278 Va. 419, 683 S.E.2d 536 (2009). "The act of violence or intimidation must precede, or be concomitant with, the taking." Id.

Appellant argues that the evidence adduced at trial only demonstrated that Beanum was forced out of the car and shot multiple times, but did not show that appellant or any of the other assailants demanded Beanum's money or belongings. Appellant cites Lewis v. Commonwealth, 43 Va. App. 126, 596 S.E.2d 542 (2004), rev'd on other grounds, 269 Va. 209, 608 S.E.2d 907 (2005), in support of his argument. However, Lewis is easily distinguishable from this case and in fact supports the finding that there was sufficient evidence to prove a taking of property from Beanum that accompanied the violence.

In Lewis, defendant and two companions went to a house to rob "somebody." Id. at 135, 596 S.E.2d at 546. The three assailants entered a house and demanded money from the people they found. Id. During this time, Luis Sanchez, a resident of the house, was outside. Id. While the three men were in the hallway with some of the victims, Sanchez entered the house through

the kitchen door.  Id.  He came in running and yelling what "sounded like police."  Id.  One of the assailants immediately shot and killed him.  Id.  Our Court found the evidence insufficient to prove an attempted robbery of Sanchez as the Commonwealth failed to prove that the assailants ever formed an intent to rob him.  Id. at 136, 596 S.E.2d at 547.  The "assailants never demanded money from him or took any direct action toward robbing him, but instead instantly ended his life."  Id.

In the instant case, the four assailants agreed to "catch a lick," a slang phrase meaning to commit a robbery.  In the parking lot of a nightclub, appellant saw Beanum and asked Jones, his co-assailant who was driving the vehicle he was in, to follow Beanum.  After following Beanum's car into a nearby neighborhood, appellant told Jones to pull up beside it.  Once Jones' vehicle had pulled up beside Beanum's car, appellant went to Beanum's car and pulled a gun from his waist as he opened Beanum's car door.  Appellant told Beanum to "get on the floor." Appellant's co-assailants on the other side of the vehicle "ransack[ed]" the car while appellant threatened Beanum with a gun.  At some point, after ordering Beanum to get on the ground, appellant said to Beanum "I told you don't."  White, Beanum's companion outside the passenger side of the vehicle, heard a gunshot and then heard Beanum yell.  Items taken from the car were later found nearby.

Here, unlike in Lewis, the jury could reasonably infer that appellant had formed the intent to rob Beanum and that this intent preceded the taking of the items from the car. Appellant had discussed "catch[ing] a lick" with his companions and then specifically told Jones to follow Beanum.  Beanum was not killed instantly; instead, he was forced out of his vehicle by appellant while appellant's co-assailants stole items from the vehicle.  Therefore, unlike the factual scenario in Lewis, the evidence in this case supports a finding that Beanum was shot

while property was being taken from him and after an intent to rob him had been formed by appellant.

Appellant further argues that there was no evidence any property was actually taken from Beanum. Appellant alleges that items were only taken from White, and while these items were sufficient for one robbery conviction, they do not support a second robbery conviction since nothing was taken from Beanum. This argument is also without merit.

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing." Stamper v. Commonwealth, 220 Va. 260, 272, 257 S.E.2d 808, 817 (1979). "Circumstantial evidence is not viewed in isolation. 'While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Hudson, 265 Va. at 514, 578 S.E.2d at 786 (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991)). Where "[t]he circumstances . . . all concur to form an unbroken chain which links the defendant to the crime beyond a reasonable doubt," the circumstantial evidence is sufficient to support the conviction. Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984).

It is well-established in Virginia law that it "is within the province of the [trier of fact] to determine what inferences are to be drawn from proved facts, provided the inferences are reasonably related to those facts." Burton v. Commonwealth, 58 Va. App. 274, 283, 708 S.E.2d 444, 449 (2011) (quoting Beck v. Commonwealth, 2 Va. App. 170, 176, 342 S.E.2d 642, 645 (1986)).

We do not find appellant's argument persuasive because under the above-stated legal principles, the jury could have properly inferred that the evidence demonstrated that property was taken from Beanum. A roll of "Hello Kitty"-branded duct tape was found by police along

with other items associated with the robbery—Jones' Tennessee license and White's iPhone.

Here, the jury could first reasonably infer that the "Hello Kitty"-branded duct tape was among

the items stolen from the Scion by appellant's co-assailants, as the distinctive tape matched the

tape that was used to repair the Scion's molding. The jury could then reasonably infer that the

roll of duct tape was taken from Beanum's "person or in his presence" at the time of the robbery,

as he was driving the Scion with the duct tape on the molding. It was thus reasonable for the

jury to conclude that the distinctive duct tape was located within the vehicle and that it was taken

from Beanum.[4] See Commonwealth v. Moseley, 293 Va. 455, 463, 799 S.E.2d 683, 686 (2017)

(finding that the totality of the suspicious circumstances, including two reasonable inferences

drawn from the evidence, was sufficient to sustain appellant's convictions for breaking and

entering and grand larceny).

In the instant case, due to the distinctive nature of the duct tape on the vehicle which

Beanum was driving immediately before the robbery, it was reasonable to infer, based upon the

proven facts, that the duct tape was taken from Beanum's presence.[5] Thus, the evidence,

considered as a whole, was sufficient to support appellant's conviction for the robbery of

Beanum.

---

[4] While the location of the roll of duct tape in the car was not established at trial, if the jury concluded it was located anywhere within the vehicle, the jury could reasonably conclude that it was taken from Beanum's presence. See Price v. Commonwealth, 59 Va. App. 764, 769-70, 722 S.E.2d 653, 655-56 (2012) (concluding that "the items taken from [the victim's] purse located in another room of the trailer were close enough to her and sufficiently under her control that, had she not been subjected to violence and intimidation by the intruders, she could have attempted to prevent the taking of her personal items").

[5] We acknowledge that the roll of duct tape stolen was presumably of little monetary value. However, no "proof of the value of the property stolen is required in a prosecution . . . for robbery." Commonwealth v. Hudgins, 269 Va. 602, 606, 611 S.E.2d 362, 365 (2005). The evidence must prove only that the item "was of some value." Pierce v. Commonwealth, 205 Va. 528, 532, 138 S.E.2d 28, 31 (1964).

## III. CONCLUSION

As the photo lineup at issue was not unduly suggestive, we hold that the trial court did not err in denying appellant's motion to suppress. We further hold that the evidence was sufficient to sustain appellant's robbery conviction. Thus, we affirm appellant's convictions.

<u>Affirmed.</u>