COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Chaney and Lorish
Argued at Virginia Beach, Virginia


TRAVONE QUINTE LANE

                                                MEMORANDUM OPINION* BY
v.        Record No. 0424-21-1                  JUDGE VERNIDA R. CHANEY
                                                    AUGUST 23, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jerrauld C. Jones, Judge

Regis N. Rice (Rice & Gregg, P.C., on brief), for appellant.

Victoria Johnson, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial in the Circuit Court of the City of Norfolk ("trial court"), Travone

Quinte Lane ("Lane") was convicted of malicious wounding in violation of Code § 18.2-51, use

of a firearm in the commission of a felony in violation of Code § 18.2-53.1, aggravated

malicious wounding in violation of Code § 18.2-51.2, and use of a firearm in the commission of

a felony, subsequent offense in violation of Code § 18.2-53.1.  On appeal, Lane contends that the

trial court erred in denying his motions to strike and reconsider the convictions because the

evidence was insufficient to support the convictions.  For the following reasons, this Court

affirms the convictions.

## I. BACKGROUND

On March 30, 2018, Quintaz Lane ("Quintaz"), Lane's brother, was sitting in the driver's

seat of his wife's car while Edward Brown ("Brown") sat in the passenger seat.  According to

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Quintaz, Lane approached the driver's side window and he and Lane "got to fussing a little bit" about money. Brown confirmed that the two brothers "were fussing." Quintaz characterized Lane as "real mad" and stated that the argument became "real heated." Quintaz testified that Lane then pulled a gun, shot Quintaz in the face and back, and shot Brown in the arm. When asked how Quintaz knew Lane was the shooter, Quintaz responded, "[b]ecause I saw him sho[o]t me. I know he shot me . . . I seen the gun." Quintaz had previously seen the gun at Lane's house, which he described as "a .45 [caliber], lemon squeeze, all black, kind of short, a little heavy, bulky." Quintaz also stated that nobody else was near the car at the time of the shooting and that Lane wore his hair in long dreadlocks.

Police Officers David Eberhardt and Finn[1] responded to the shooting around 6:00 p.m. On the way, they received a dispatch stating that a suspect with dreadlocks was seen leaving the scene in a gray hoodie and with a gun. When they arrived, the officers observed Quintaz sitting next to the driver's side of the car with wounds to his face and side. Quintaz was still conscious. Officer Eberhardt asked Quintaz if he knew who shot him; he responded "uh-huh," which Officer Eberhardt interpreted as "yes." However, when Officer Eberhardt asked who shot him, Quintaz stated that he did not know. At trial, Quintaz explained that he was untruthful with Officer Eberhardt because he intended to "take it in [his] own hands." Brown was sitting on the curb behind the car. Brown told Officer Eberhardt that he did not see anything but that "he heard gunshots and felt a burn in his shoulder."

Officer Eberhardt found teeth on the driver's seat, and Officer Finn found several shell casings near the car. Detective Douglas Frazier ultimately recovered five .45 caliber cartridges near the car, a .45 caliber cartridge in the rear passenger seat of the vehicle, and a spent bullet

---

[1] Finn did not provide a first name.

wedged in the driver's door. Firearms expert Juliana Red Leaf testified that each shell casing was fired from the same gun.

Emergency medical technician Martin Wilkerson intubated Quintaz at the scene and gave him "a paralytic and another drug that kind of makes him forget everything that happens." Paramedics then transported Brown and an unconscious Quintaz to the hospital. Trauma surgeon Jessica Burgess testified that Quintaz "sustained a gunshot through-and-through the cheeks that broke the mandible . . . [and] injured his tongue" and that another bullet "entered his chest, broke several ribs, and lacerated his lung, causing . . . a collection of blood in his chest." Quintaz was in a medically-induced coma for four days, during which time the hospital drained the blood from his chest, placed a breathing tube through his neck, and performed oral surgery to repair his jaw and tongue. Quintaz has various scars and wears a brace in his jaw, which causes him ongoing pain. Quintaz testified that he feels "throbbing to [his] face" and that "[s]ome days [he] can't even sleep on [his] side" but has "to stay up." Surgeon Burgess testified that Brown sustained a single gunshot wound to his left shoulder.

Brown was generally uncooperative during his testimony, repeatedly stating that he did not want to testify and was not a "snitch."[2] Lane moved to strike all charges after the Commonwealth's case-in-chief, arguing that there was reasonable doubt that Lane was the shooter. The trial court denied Lane's motion.

The bulk of Lane's case-in-chief centered around an asserted alibi defense, presented through the testimony of Lane's wife, Karen Dissel ("Dissel"), and her friend, Brandon Truss ("Truss"). Dissel and Truss testified that Truss drove Lane, Dissel, and Lane's child to the Virginia Beach jail where Dissel was serving a criminal sentence on weekends. On the way,

---

[2] Brown went so far as to testify that he was not injured, medical records notwithstanding.

Dissel received a telephone call indicating that Quintaz had been shot, after which Truss turned around and drove to the hospital. They remained at the hospital for fifteen minutes before leaving because they were not allowed to see Quintaz. Lane submitted evidence confirming that Dissel was scheduled to serve weekends at the Virginia Beach jail starting on March 30, 2018, but that the reporting day was changed to the following weekend. Dissel testified that she successfully obtained a continuance to her report date because she had to go to the hospital. Truss learned that Lane had been charged several weeks after the shooting but did not go to the police to provide an alibi. Detective William Cogswell testified that, during the investigation, he had "receive[d] information" that Lane was "on his way to [Virginia] Beach to bring his girlfriend" at the time of the shooting but was not provided with Truss' name and did not investigate the asserted alibi.

Lane renewed his motion to strike all charges, arguing that there was no evidence that Lane shot Brown and that Lane's alibi created reasonable doubt as to the remaining charges. The trial court denied Lane's motion and, after taking the case under advisement, found Lane guilty of malicious wounding, aggravated malicious wounding, use of a firearm in the commission of a felony, and use of a firearm in the commission of a felony, subsequent offense.

Lane subsequently moved to vacate his convictions, arguing that Quintaz's eyewitness identification was insufficient to establish Lane as the perpetrator. The trial court denied the motion and sentenced Lane to a total of thirty-three years of incarceration with twenty-three years suspended.

II. ANALYSIS

A. Standard of Review

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Yerling v. Commonwealth*, 71 Va. App. 527, 530 (2020)

- 4 -

(quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)). This standard requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez*, 291 Va. at 248 (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### B. Sufficiency of the Evidence

Lane argues that the trial court erred by denying his motions to strike and reconsider the convictions. Both assignments of error challenge the sufficiency of the evidence, and we consider them together.

A defendant is guilty of malicious wounding when he "maliciously shoot[s], stab[s], cut[s], or wound[s] any person or by any means cause[s] him bodily injury, with the intent to maim, disfigure, disable, or kill." Code § 18.2-51. If the defendant does so and "the victim is

thereby severely injured and is caused to suffer permanent and significant physical impairment," the defendant is guilty of aggravated malicious wounding. Code § 18.2-51.2(A). Physical impairment is "any physical condition, anatomic loss, or cosmetic disfigurement which is caused by bodily injury, birth defect, or illness." *Newton v. Commonwealth*, 21 Va. App. 86, 90 (1995) (emphasis omitted) (applying the definition of physical impairment codified in Code § 51.5-3 to the aggravated malicious wounding statute). Malice can be inferred when the defendant uses a deadly weapon such as a firearm. *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012). A defendant violates Code § 18.2-53.1 by using a firearm to commit malicious wounding or aggravated malicious wounding.

Lane first challenges his conviction for aggravated malicious wounding as to Quintaz. Lane relies on *Commonwealth v. Smith*, 259 Va. 780 (2000), in which the Supreme Court of Virginia reversed a defendant's conviction for malicious wounding after finding the evidence insufficient to prove that the defendant was the perpetrator. The defendant in *Smith* knocked the victim unconscious by punching him in the back and stomach. *Id.* at 782. When the victim awoke, doctors were treating him for stab wounds he did not remember sustaining. *Id.* The victim testified that he did not remember seeing the defendant with a knife or any other weapon. *Id.* The Court found that the evidence presented two possible hypotheses: (1) that the defendant stabbed the victim, or (2) that the victim's unconsciousness "inspired an unidentified pedestrian present at the scene (or one arriving later) to use a knife to terrorize the victim in order to achieve some ulterior motive." *Id.* at 783.

*Smith* was not a case about witness credibility. The Supreme Court of Virginia concluded in *Smith* that, even if the victim's testimony were believed, there was insufficient evidence to prove that the defendant was the perpetrator. By contrast, Quintaz testified that he not only saw Lane with a gun, but that he saw Lane fire it. That testimony, if believed,

established the elements of the offense. *Smith* is therefore inapposite, and we must consider whether the trial court erred in crediting Quintaz's testimony.

"Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). Thus, "[t]he mere fact that a witness may have . . . given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Juniper*, 271 Va. at 415. Instead, such circumstances are "appropriately weighed as part of the entire issue of witness credibility, which is left to the [fact-finder] to determine." *Id.* (citing *Shelton v. Mullins*, 207 Va. 17, 22 (1966)).

Lane contends that Quintaz's testimony is inherently incredible because: (1) he initially told the police that he did not know who shot him, (2) he identified Lane as the shooter only after waking up from a coma, and (3) the medical testimony demonstrates a faulty memory. These considerations do not rise to the level of inherent incredibility. Quintaz provided an explanation as to why he initially lied to the police: he wanted to take matters "into [his] own hands." At the time Quintaz spoke to the police, he had just been shot and was losing a great deal of blood.

- 7 -

Such circumstances can easily impair one's decision-making, and we cannot say that Quintaz's explanation is "so contrary to human experience as to render it unworthy of belief." Similarly, the medical evidence and the timing of Quintaz's identification bear on Quintaz's credibility, but the trial court was in a better position than this Court to consider those factors in assessing such credibility.

Moreover, Quintaz's testimony was corroborated in several important respects. Despite his evasiveness, Brown confirmed that Lane and Quintaz argued shortly before the shooting, undermining Lane's asserted alibi that he was never at the scene. A police dispatch stated that a suspect with dreadlocks was seen leaving the scene with a gun, and Quintaz testified that Lane had dreadlocks. Quintaz testified that Lane owned a .45 caliber firearm, which matched the cartridges found at the scene. In light of all these factors, it was not manifest error for the trial court to credit Quintaz's testimony.

Lane next challenges his conviction of malicious wounding as to Brown, relying on Brown's lack of identification. Lane frequently points to Quintaz being the only witness who identified Lane as the shooter. It is well-established, however, that a single witness, if believed, is sufficient to establish a defendant's identity as the perpetrator. *Bryant v. Commonwealth*, 10 Va. App. 421, 427 (1990). Quintaz expressly testified that Lane shot him and Brown at the same time. Even though Brown did not identify a shooter, Quintaz's testimony and the clear contemporaneity and close proximity of the shootings provided sufficient evidence that the trial court could conclude that Lane shot both victims.

Finally, Lane argues that, even if there was sufficient evidence in support of the malicious wounding and aggravated malicious wounding convictions, there was insufficient evidence that he used a firearm. Focusing on Quintaz's testimony that he had previously seen the gun at Lane's house, Lane argues that "proof that a firearm was located close to the

- 8 -

defendant was not sufficient to prove the elements of the offense." Lane misconstrues the Commonwealth's evidence. Quintaz testified not only that he saw the weapon at Lane's house but also that he saw Lane *fire* the weapon during the event in question. This testimony, if believed, clearly establishes the offenses. Accordingly, there is sufficient evidence to support Lane's convictions for use of a firearm in the commission of a felony and use of a firearm in the commission of a felony, subsequent offense.

### III. CONCLUSION

The trial court's decisions to deny the motion to strike and the motion to reconsider the convictions were not plainly wrong. Accordingly, this Court affirms Lane's convictions.

*Affirmed.*