COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, AtLee and Raphael
Argued at Norfolk, Virginia


ADRIAN ELIJAH PIERCE

MEMORANDUM OPINION* BY
v.        Record No. 0281-22-1        JUDGE STUART A. RAPHAEL
FEBRUARY 21, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

Joshua A. Goff (Goff Voltin, PLLC, on brief), for appellant.

Aaron J. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Adrian Elijah Pierce of second-degree murder, use of a firearm in the

commission of a felony, and misdemeanor destruction of property.  On appeal, Pierce contends

that the two main witnesses against him gave inherently incredible testimony and that the

Commonwealth failed to prove that he shot the victim.  We disagree and affirm the convictions.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires that we "discard"

the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true

all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

Around 3:00 p.m. on April 16, 2019, high-school senior A.M. and her friend met Pierce and T.R. at a park near an apartment complex. A.M. testified at trial as an eyewitness to the shooting at issue. The group walked to D.Y.'s apartment where D.Y. and his neighbor—a close friend of the victim, Kahli Curry—got into a fight. After D.Y.'s mother ended the fight, Pierce, A.M., D.Y., and two other friends went to the park, then to the apartment's fitness center to smoke marijuana. They encountered Curry when they gathered in a breezeway to use the public Wi-Fi. Unarmed, Curry raised his arms and declared, "I don't want no smoke." A.M. saw Pierce draw a gun from his waistband and shoot Curry repeatedly before fleeing with T.R. and D.Y. A.M. testified that although she had never met Pierce before that day, she was certain Pierce was the shooter because she had been "inches" away from him when he fired the shots. She also said that Pierce was the only person there who had a weapon.

When police arrived in response to a 911 call reporting the shooting, they found Curry lying on the ground, bleeding from gunshot wounds that would prove fatal. Residents had heard the shots and had seen Curry collapse after he ran from the breezeway, where police collected several bullet fragments and cartridge casings. Bullets had also shattered the windshield of a parked car. The apartment's property manager gave police screenshots of a video from a security camera in the fitness center that had recorded Pierce smoking marijuana with A.M. and the others about ten minutes before the shooting.

Two days later, Newport News Police Detective William Gordon interviewed Pierce, who admitted being present during "a fight," but not "for the shooting." Later that month, Gordon interviewed A.M., who identified Pierce as the shooter. An investigation of Pierce's

cellphone, email, and Lyft-account records established that he was present during the shooting. Gordon interviewed Pierce again, but he still denied involvement in the murder.

Pierce was arrested and subsequently indicted for second-degree murder, use of a firearm in the commission of a felony, and destruction of property. While awaiting trial, Pierce was incarcerated in the same cell as A.J. According to A.J., Pierce said that the Commonwealth's only evidence against him was the testimony of "a young lady" named "[A.M.]." A.J. also testified that he overheard Pierce tell another inmate to "make sure she doesn't come to court." Pierce told A.J. that he had "buried" a gun that had been "used in a murder," and someone named "[T.H.]" had since "got[ten] locked up" for possessing it in Virginia Beach. Detectives confirmed that, in late April 2019, Virginia Beach police had arrested T.H. for illegally possessing the gun used in the shooting.

At trial, A.J. acknowledged that he had an extensive criminal record, including 27 pending criminal charges.[1] He maintained, however, that the Commonwealth had offered nothing in exchange for his testimony. A.J. denied reading Pierce's "discovery" materials or other legal mail, but he admitted that he had access to Pierce's bunk while the two were confined and that it was common to store private legal documents underneath one's bunk.

After the trial court denied his motion to strike, Pierce testified in his defense. His account of the events differed from A.M.'s in only one principal respect: he identified D.Y. as the shooter. Pierce admitted that he had "probably" encountered A.J. while incarcerated but denied discussing his case with anyone at the jail. He also acknowledged that he had repeatedly lied to police during their investigation and that his cellphone records proved his presence at the shooting. But Pierce maintained that D.Y. murdered Curry.

---

[1] A.J. had been convicted of nine felonies and four misdemeanor crimes of moral turpitude.

The jury convicted Pierce of second-degree murder, use of a firearm in the commission of a felony, and misdemeanor intentional destruction of property. Pierce appeals.

ANALYSIS

Pierce argues that no physical or scientific evidence tied him to the shooting. He says that the Commonwealth's "case rested almost entirely on the eyewitness testimony of" A.M., who "had never met [him] before" the day of the murder. Pierce emphasizes that the shooting "occurred very suddenly and unexpectedly," but A.M. did not immediately report it. He adds that A.J.'s testimony was undermined by his criminal record and revealed nothing new that only the shooter himself would have known. Pierce urges us to conclude that "no reasonable finder of fact" would have convicted him based on the testimony of A.M. and A.J. We are not persuaded.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

- 4 -

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). The testimony of a single witness, if believed, may be sufficient to establish the defendant's identity. *Bryant v. Commonwealth*, 10 Va. App. 421, 427 (1990).

> [T]he factors to be considered in evaluating the likelihood of a misidentification [by an eyewitness] include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Cuffee*, 61 Va. App. at 364 (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

The record supports the jury's finding that Pierce shot Curry. At trial, A.M. testified that after spending the afternoon with Pierce, she stood only "inches" away from him as he fired the fatal shots. She said he was the only one who was armed. Less than a month later, A.M. identified Pierce to the police as the shooter. Her account was corroborated by A.J.'s testimony. That evidence suffices to prove that Pierce was the perpetrator. *Cf. Cuffee*, 61 Va. App. at 366 (finding evidence sufficient to prove that the defendant was the shooter when one eyewitness identified him with a "high level of certainty," even though another witness was "not '[one] hundred percent' certain" (alteration in original)).

In addition, the jury could reasonably infer Pierce's guilt from his false statements to police and his efforts to conceal the murder weapon. *See Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992) ("[I]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself." (alteration in original) (quoting *Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991))). By his own

admission, Pierce repeatedly lied to police about his presence during the shooting.  A.J. testified that Pierce confessed to burying the murder weapon and told a fellow inmate to prevent A.M. from testifying against him at trial.  Although Pierce maintained that D.Y. was the gunman, the jury "was at liberty to discount [his] self-serving statements as little more than lying to 'conceal his guilt,' and could treat such prevarications as 'affirmative evidence of guilt.'" *Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008) (first quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 10 (2004); and then quoting *Wright v. West*, 505 U.S. 277, 296 (1992)).

Pierce insists that the testimony from A.M. and from A.J. was inherently incredible. "Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)).  "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)).  "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'"  *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Pierce does not come close to meeting that high bar here.  Pierce's own testimony corroborated most of A.M.'s account.  *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (finding a witness's testimony not inherently incredible when it was corroborated by other evidence).  A.M. had been with Pierce for hours before the shooting, standing right beside

him as he shot Curry. There was no evidence that "rumors" had influenced her testimony. "The mere fact that [she] may have delayed in reporting knowledge of a case . . . does not necessarily render [her] testimony unworthy of belief." *Juniper*, 271 Va. at 415. That circumstance was properly weighed by the jury when assessing witness credibility. *Id.*

Similarly, A.J.'s criminal record, though extensive, did not automatically render his testimony unworthy of belief. *See Yates v. Commonwealth*, 4 Va. App. 140, 144 (1987). Pierce presented no evidence to support his theory that A.J. had read Pierce's legal papers or was promised something in exchange for his testimony. And even if A.J. hoped for leniency in his pending cases, a witness's testimony is not inherently incredible just because he hopes to ingratiate himself with the Commonwealth. *Id.*; *Johnson v. Commonwealth*, 58 Va. App. 303, 312, 315 (2011) (finding testimony not inherently incredible simply because the witness "hope[d] for leniency" from the Commonwealth). Rather, that circumstance is "appropriately weighed as part of the entire issue of witness credibility." *Juniper*, 271 Va. at 415.

CONCLUSION

The testimony from the eyewitness to the shooting and from Pierce's cellmate sufficed to establish his identity as the perpetrator and was not inherently incredible. The trial court thus committed no error when it denied Pierce's motions to strike.

*Affirmed.*