COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Callins

JEFFERY COLUMBUS BROWN, SOMETIMES KNOWN AS
 JEFFREY COLUMBUS BROWN

MEMORANDUM OPINION[*]
PER CURIAM
SEPTEMBER 17, 2024

v.      Record No. 0947-23-2

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

(Kevin E. Calhoun, on brief), for appellant.

(Jason S. Miyares, Attorney General; Timothy J. Huffstutter,
Assistant Attorney General, on brief), for appellee.


A jury convicted Jeffery Columbus Brown of two counts of malicious wounding, one count

of maliciously shooting within an occupied dwelling, and one count of use of a firearm in the

commission of a felony.[1]  On appeal, Brown challenges the admissibility of certain hearsay

statements and the victim's out-of-court identification.  Additionally, Brown contests the

sufficiency of the evidence supporting his convictions.  After examining the briefs and record in

this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is

wholly without merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).  Finding no reversible error, we

affirm the trial court's judgment.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The jury acquitted Brown of two counts of attempted murder, one count of robbery, one
count of armed burglary, and a separate charge of use of a firearm in the commission of a felony.

*Events leading to Brown's arrest*

In 2020 and 2021, Holly Myres and her boyfriend, DeJohn Morris, lived together in an apartment with their pet dog. Their friend, Brown, sold cocaine to them, and about twice a year they would all "hang out" and "party" at the apartment. Morris and Brown were childhood friends, and Myres had known him since 2017 or 2018. Brown sometimes stayed overnight at their apartment, and Myres occasionally drove him places. Myres' and Morris' downstairs neighbor, Diane Kestner, had a motion-activated security camera on the doorbell of her front door. If activated, the camera transmitted a notification with a contemporaneous video recording to Kestner's cell phone.

One morning in March 2020, Brown invited Morris to go to a store to buy cigarettes. When Morris agreed to join him, Brown drove to Morris' apartment and picked him up. He then drove them to another apartment complex instead of the store and parked. Once they arrived, Brown pointed a black "nine-millimeter" handgun at Morris, demanding, "[G]ive me all your money." In response, Morris gave Brown "nine hundred dollars" cash. Before departing, Brown allowed Morris to exit the car and warned that he would kill him and Myres if Morris reported the robbery to police. Morris walked back to his apartment, told Myres about the robbery, and called 911. An officer arrived at the apartment and interviewed Morris about the robbery, during which Morris said that Brown had stolen "fourteen hundred dollars" from him. A few months

---

[2] On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

later, Morris sent Brown a message on social media accusing him of the robbery. Brown replied, denying involvement.

Around 9:40 a.m. on September 15, 2021, Morris and Myres were asleep in the bedroom of their apartment when she awoke to a "knock on the [front] door" and her dog barking. Myres opened the front door and saw a man facing away from her wearing a "gray hoodie" with the "hood up." Myres' dog ran outside and "chased" the man, who left without "turn[ing] around." After retrieving her dog, Myres returned to her apartment without locking the front door and went to her bedroom. Myres checked her cell phone and noticed that she had received text messages from a friend warning her "not to go outside." Seconds later, Myres "looked up" from her phone and saw "a man with a gun in [her] apartment" wearing a "gray hoodie with the hood up" and a "mask" covering his face. The man aimed the gun at Myres and shot her repeatedly as she "jumped into" a nearby bathroom. Meanwhile, Morris awoke and ran to assist Myres but the gunman also shot him repeatedly. Around 9:42 a.m., the gunman departed, and Myres called 911.

Soon thereafter, police arrived and found Myres and Morris bleeding from gunshot wounds. Emergency medical technicians transported Myres and Morris to a hospital emergency room. On the way to the hospital, one of the technicians gave Myres a "shot of fentanyl" to ease her pain. Meanwhile, police searched the residence and found 11 empty bullet cartridges and 4 spent nine-millimeter bullets but no firearms. Forensic examiners did not find any DNA or fingerprints on the cartridges collected from the scene.

During the search, Fredericksburg Police Department Detective Nikki Lovett reviewed videos from security cameras at the apartment complex, which showed that around 8:00 a.m., a vehicle arrived in a parking lot across from Myres' apartment building and parked. About 30 minutes later, the camera recorded someone exit the vehicle wearing a "hoodie" and walk toward

- 3 -

Myres' apartment building.[3]  Lovett also spoke to Kestner, who reported that around 8:30 a.m., she received a notification from her doorbell camera indicating that someone was outside her apartment.  The camera recorded a man approach her doorway wearing a gray hoodie and a white mask covering his mouth.  The man stole Kestner's doormat and briefly departed.

Moments later, the man returned and paced in front of the camera wearing his mask lowered, exposing his face.  Detective Lovett obtained the videos and created four screenshots—one of which depicted the suspect with his face exposed—and sent them to Fredericksburg Police Detective Johnny Wright.

Wright went to the hospital emergency room where Myres was preparing for surgery and interviewed her about the shooting.  Although Myres was "upset" and in "extreme pain," she described the shooter's height and clothing but warned that she could not identify him "by face" because he had been "completely masked."  Wright then showed her the screenshot from Kestner's doorbell camera video depicting the suspect's exposed face, and she appeared "shocked."  She identified Brown as the person depicted in the screenshot and cried.

Two days later, on September 17, 2021, Virginia State Trooper Solomon Albert encountered Brown during a traffic stop in another county.  When Albert activated his patrol car's emergency lights, Brown continued driving for two miles before stopping.  Brown initially provided a false date of birth but eventually disclosed his identity and admitted that he was "wanted."  Albert arrested Brown on "several" outstanding warrants.

At the jail, a detective conducted a video-recorded interview with Brown about the shooting.[4]  Denying involvement, Brown initially said that he had been visiting family near

---

[3] At trial, the Commonwealth did not introduce the apartment complex security camera videos into evidence; Detective Lovett testified to the footage's contents to the jury.

[4] At trial, the Commonwealth played portions of the interview video for the jury but did not make the video part of the appellate record.

Myres' apartment when the shooting occurred and fled to avoid being shot. Brown later claimed, however, that he was not present during the shooting and had mistakenly thought the detective was referring to an earlier incident. Police arrested Brown, and a grand jury indicted him for two counts of attempted murder, two counts of malicious wounding, one count of robbery, one count of armed burglary, one count of maliciously shooting within an occupied dwelling, and two counts of use of a firearm in the commission of a felony.

*Events at trial*

At trial, Detective Wright testified that before he visited Myres at the hospital, she had not yet identified the shooter and had only described the suspect's gender, height, and clothing. When the Commonwealth asked Wright to explain "what happened when [he] showed" her the screenshot of the suspected shooter, Brown objected on hearsay grounds. In response, the Commonwealth proffered that it would lay a foundation to admit Myres' response as an "excited utterance." The trial court held that Brown's hearsay objection was premature because the Commonwealth only sought to elicit Myres' non-verbal reaction, not her statements.

Wright then testified that when he showed Myres the screenshot, she "had a shocked look" and provided "some information." Then, "[b]ased on the information that she gave," Wright "identif[ied] and relay[ed] to other detectives a suspect in the shooting." When Wright specified that "Jeffery Brown" was the "name" he had relayed to the other detectives, Brown objected, arguing that the statement was inadmissible double hearsay. The trial court overruled the objection because Wright could "say[] what he told others."

Myres testified that she was unable to identify the shooter until Wright showed her the screenshot depicting the suspect. She acknowledged that she could not discern the gunman's race or facial features during the shooting because he was masked. Myres also acknowledged that she was not "focused" on identifying the gunman during the shooting because she was

- 5 -

"shocked." She maintained that her thinking was "razor sharp" when Wright showed her the screenshot of the suspect at the hospital, although she was "very emotional" and had received an "injection of fentanyl" recently.

Without objection, the Commonwealth showed Myres a copy of the screenshot Wright showed her at the hospital and she confirmed that it depicted Brown. Myres also identified Brown in the courtroom and testified that he was "the man who shot" her. In addition, Myres testified without objection that a "few days" after her surgery, another detective showed her the same screenshot, and she identified Brown as the person depicted. On cross-examination, Myres acknowledged that she met with police and the prosecutor four or five times before trial and each time identified Brown as the person depicted in the screenshot. Myres maintained that she was "certain" Brown was the shooter but acknowledged that she "h[ad] become more certain" over time.

Morris testified that although he was unable to identify the shooter, he assumed that it was Brown because Brown had threatened to kill Morris and Myres for reporting the prior robbery to police. Morris maintained that Brown robbed him in March 2020 and denied telling police that Brown stole more than $900.

*Closing arguments and jury verdict*

During closing arguments, the Commonwealth asserted that three key "pillars" proved Brown's guilt. First, Myres' testimony identifying Brown as the shooter, combined with her out-of-court identification at the hospital, proved that Brown shot Myres and Morris. Second, Brown had the opportunity and motive to kill the victims because he knew them and Morris reported the prior robbery to police. Third, Brown's shifting explanations to police regarding whether he was present during the shooting suggested that he was lying.

- 6 -

In response, Brown argued that Wright tainted Myres' out-of-court identification by showing her a single image of the suspected shooter while she was injured, upset, and under the influence of fentanyl. Similarly, he asserted that her testimony identifying Brown as the perpetrator was unreliable because she could not do so until Wright showed her the screenshot.

Following argument, the jury convicted Brown of two counts of malicious wounding, one count of maliciously shooting within an occupied dwelling, and one count of use of a firearm in the commission of a felony but the jury acquitted Brown of the other charges.

*Brown's Motion to Set Aside the Verdict*

Brown moved the trial court to set aside the jury's guilty verdicts, arguing that the evidence was insufficient to support his convictions because it failed to prove he was the shooter. Reiterating the points he raised during closing argument, Brown argued that Myres' out-of-court identification was the product of an unduly suggestive identification procedure and inherently unreliable. He also argued that Myres' and Morris' testimony was incredible because they were "biased" and Morris provided "inconsistent" accounts of the robbery. Additionally, Brown asserted that no other evidence corroborated Myres' identifications, including any "forensic evidence" connecting him to the shooting or circumstantial evidence demonstrating his opportunity or motive to commit the offenses.

At the hearing, Brown clarified that he was not challenging the admissibility of Myres' out-of-court identification at the hospital. Instead, Brown argued that that identification was insufficient to prove he perpetrated the offenses because it was unreliable. Following argument, the trial court denied the motion.

On appeal, Brown argues that the trial court erred by allowing Detective Wright to testify that he told other detectives that Brown was the suspected shooter because that testimony contained inadmissible double hearsay. Brown also contends that the trial court violated his due

process rights by permitting the Commonwealth to introduce the out-of-court identification Myres made at the hospital because it was unreliable and the identification procedure was unduly suggestive. Additionally, Brown contends the evidence was insufficient to support his convictions because it failed to prove he was the shooter.

ANALYSIS

I. *Any error committed by the trial court in allowing Detective Wright's challenged statements was harmless.*

Brown argues that Detective Wright's testimony that Wright told other detectives he "identif[ied]" Brown as the shooter "[b]ased on the information" Myres had provided Wright during her interview at the hospital contained inadmissible "hearsay within hearsay." Specifically, Brown asserts that Wright's statements to the other detectives comprised "two 'levels' of hearsay statements": "(1) the statement Detective Wright gave to the other detectives and (2) the statement . . . Myres gave to Detective Wright" at the hospital. Brown contends that the Commonwealth failed to demonstrate that the second "level" satisfied an established hearsay exception.

"An appellate court reviews a decision to admit or exclude evidence where no federal constitutional issue was raised under the standard for non-constitutional harmless error provided in Code § 8.01-678." *Haas v. Commonwealth*, 299 Va. 465, 467 (2021). "Under that standard, the court 'determine[s] whether there has been a fair trial on the merits and whether substantial justice has been reached [by] decid[ing] whether the alleged error substantially influenced the jury. If it did not, the error is harmless.'" *Id.* (alterations in original) (quoting *Clay v. Commonwealth*, 262 Va. 253, 259 (2001)).

In conducting our harmless error review, this Court "consider[s] the potential effect of the excluded evidence in light of all the evidence that was presented to the jury." *Id.* (alteration in original) (quoting *Commonwealth v. Proffitt*, 292 Va. 626, 642 (2016)). "Among the circumstances in which harmless error occurs is when the improperly admitted evidence was

- 8 -

'merely cumulative of other, undisputed evidence.'" *Warnick v. Commonwealth*, 72 Va. App. 251, 272 (2020) (quoting *McLean v. Commonwealth*, 32 Va. App. 200, 211 (2000)).

Without objection at Brown's trial, Myres identified Brown for the jury as the person depicted in the photo Detective Wright presented to Myres at the hospital. Myres also testified, without objection, that the police showed her that screenshot four or five times since the shooting and she identified Brown as the person depicted *each* time. Again without objection, Myres identified Brown in the courtroom and testified that she was "certain" he was the shooter. Thus, we are confident that any error in admitting Wright's challenged statements was harmless because the statements were "merely cumulative of other, undisputed evidence." *Warnick*, 72 Va. App. at 272 (quoting *McLean*, 32 Va. App. at 211).

II. *Brown's argument contesting the admissibility of Myres' out-of-court identification is procedurally defaulted.*

Next, Brown argues that the trial court erred by allowing Detective Wright to testify Myres identified Brown as the suspect depicted in the screenshot when Wright showed Myres the photo at the hospital. Brown contends that this allowance violated his due process rights because the identification procedure was "unduly suggestive" and the out-of-court identification was inherently unreliable.[5] Brown asserts that Wright tainted Myres' identification by showing her "a single photograph" of the suspected shooter rather than an array of alternative suspects. Relying on *Neil v. Biggers*, 409 U.S. 188 (1972), Brown argues that even if the identification procedure was not unduly suggestive, Myres' out-of-court identification was unreliable because (1) she initially failed to provide "any significant details about the suspect" beyond a vague description of his height and clothing, suggesting that she "did not have a sufficient opportunity

---

[5] Brown only challenges the admissibility of Myres' out-of-court identification at the hospital; he does not argue that Myres' in-court identifications were fruit of the poisonous tree or otherwise inadmissible.

to view" her attacker; (2) "Myres was not paying close attention to the particular characteristics of the suspect" during the shooting because she was emotionally distressed; (3) "the accuracy of" her initial description of the suspect was "less than satisfying"; and (4) Myres was under the influence of "fentanyl," "upset," and "in a lot of pain" during the identification procedure. Brown acknowledges that the identification occurred shortly after the shooting and Myres expressed a high "level of certainty" but argues those circumstances "are at most neutral factors and are not so significant to render the identification independently reliable."

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). Accordingly, "this Court 'will not consider an argument on appeal [that] was not presented to the trial court.'" *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004) (alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)). "'Rule 5A:18 applies to bar even constitutional claims.'" *Id.* Moreover, appellate courts "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc) (citing *Floyd v. Commonwealth*, 219 Va. 575, 584 (1978)).

Brown failed to preserve his due process argument contesting the admissibility of Myres' out-of-court identification for appellate review because he did not raise it in the trial court. Brown did not move the trial court *in limine* to exclude Myres' out-of-court identification, nor did Brown object when the Commonwealth introduced that identification into evidence. Although Brown argued during his motion to set aside the jury's guilty verdicts that the out-of-court identification was unreliable, he challenged only the sufficiency of the evidence to prove he perpetrated the offenses—not the admissibility of the out-of-court identification. *See id.* Thus, Brown's argument that the trial court violated his due process rights by admitting the out-of-court identification is forfeited. *See Arrington v. Commonwealth*, 53 Va. App. 635, 642 (2009) (holding defendant forfeited Fourth Amendment claim by failing to move to suppress the evidence before trial or object to it during trial).

III. *The ends of justice exception does not apply in this case.*

Brown asks this Court to invoke Rule 5A:18's ends of justice exception because allowing the challenged identification constituted "clear," "substantial and material error." Brown argues that the error was "clear" because it is well settled that police showing a witness a single photograph of a suspect is unduly suggestive and the *Neil* reliability factors amply supported exclusion. Brown also asserts that the error was "substantial and material" because allowing the out-of-court identification violated his due process rights and prejudiced his defense by "bolster[ing] the reliability of [Myres'] in-court identifications."

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a . . . [manifest] injustice." *Commonwealth*

- 11 -

*v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). To constitute a "manifest injustice," the error must "be clear, substantial and material." *Brown v. Commonwealth*, 8 Va. App. 126, 132 (1989). That is, the error "must involve substantial rights" and "clearly [have] had an effect upon the outcome of the case." *Id.* at 131. "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)).

"The proper inquiry for constitutional harmless error is 'whether the [jury] *would have* returned the same verdict absent the error.'" *Commonwealth v. White*, 293 Va. 411, 421-22 (2017) (quoting *Washington v. Recuenco*, 548 U.S. 212, 221 (2006)); *see Chapman v. California*, 386 U.S. 18, 24 (1967) (holding that constitutional error is harmless if the appellate court is "able to declare a belief that it was harmless beyond a reasonable doubt"). In conducting its harmless error analysis, an appellate court must consider "the potential effect of the [erroneously admitted or] excluded evidence in light of all the evidence" before the jury. *Haas*, 299 Va. at 467 (quoting *Proffitt*, 292 Va. at 642) (considering non-constitutional error). "[W]hether such an error is harmless in a particular case depends upon a host of factors," including the "importance of the [tainted evidence] in the prosecution's case, whether [that evidence] was cumulative, the presence or absence of evidence corroborating or contradicting the [tainted evidence] on material points . . . [and] the overall strength of the prosecution's case." *Crawford v. Commonwealth*, 281 Va. 84, 101 (2011) (second, third, fourth, and fifth alterations in original) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

The ends of justice exception does not apply in this case because Brown's argument fails to demonstrate how Myres' out-of-court identification "had an effect upon the outcome of the case." *Brown*, 8 Va. App. at 131; *accord United States v. Olano*, 507 U.S. 725, 734 (1993).

Furthermore, Brown did not object at trial when Myres identified Brown as the suspect depicted in the photo Wright showed Myres at the hospital; Brown also failed to object when Myres confirmed that she had repeatedly identified Brown when shown the same photo multiple times after the shooting occurred. Finally, Brown also failed to object when Myres identified him in court and testified that she was "certain" that Brown was the shooter. Thus, as stated previously, the challenged out-of-court identification was "merely cumulative of other, undisputed evidence." *Warnick*, 72 Va. App. at 272 (quoting *McLean*, 32 Va. App. at 211).

Moreover, the Supreme Court has held that "'[t]he[ ] conventional devices' of '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof'" may expose mistaken eyewitness testimony despite a court's failure to exclude it. *Walker v. Commonwealth*, 302 Va. 304, 319 (2023) (alterations in original) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)). Here, although the Commonwealth emphasized Myres' out-of-court identification during closing argument, Brown thoroughly cross-examined Myres and Wright regarding the suggestiveness of the identification procedure and the identification's unreliability, and reminded the jury of those deficiencies during closing argument.

Nonetheless, Brown maintains that Myres' out-of-court identification may have influenced the jury's verdict by "bolster[ing] the reliability" of her in-court identifications. That argument, however, merely demonstrates that "a miscarriage *might* have occurred[.]" *Brown*, 8 Va. App. at 132. "[R]ather, in order to prevail when the appellant has not timely objected to the error at trial 'the record [must] affirmatively [show] that a miscarriage of justice has occurred.'" *Id.* at 131 (second and third alterations in original) (quoting *Mounce v. Commonwealth*, 4 Va. App. 433, 436 (1987)). Thus, Brown failed to meet the burden of showing that the challenged identification "clearly had an effect upon the outcome of the case." *Id.* Accordingly,

the ends of justice exception does not apply, and Rule 5A:18 bars our review of Brown's argument.

IV. *The Commonwealth's evidence was sufficient to support Brown's convictions.*

Brown argues that the evidence at trial was insufficient to support his convictions because it failed to prove his "identity as the shooter." Brown contends that Myres' testimony was incredible because she did not immediately tell police that Brown shot her. Brown also asserts that Myres' out-of-court identification at the hospital had limited probative value because it was unreliable and tainted by the unduly suggestive identification procedure. Brown goes on to state that no "forensic evidence" or circumstantial evidence corroborated Myres' identifications. Brown acknowledges that the jury could infer he was motivated to commit the offenses based on Morris' testimony regarding the prior robbery and Brown's death threats, but argues that Morris' testimony was inherently incredible because Morris was biased and provided inconsistent accounts of the robbery. Similarly, Brown concedes that the motive evidence combined with the security camera videos depicting the suspect near Myres' apartment about an hour before the shooting suggested that Brown had the opportunity to commit the offenses. Brown argues, however, that it was unreasonable for the jury to conclude that he would have "linger[ed] around the scene for such a long period of time" rather than immediately committing the offenses upon arrival "to avoid detection."

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204,

228 (2018)). "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). Identity may be proved by direct or circumstantial evidence. *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). To that end, this Court has held that the "uncorroborated testimony of one witness may be sufficient to sustain a verdict of guilty," provided the testimony is not inherently incredible. *Bryant v. Commonwealth*, 10 Va. App. 421, 427 (1990) (quoting *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983)). The "fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). We will disturb the fact finder's conclusions on issues of witness credibility only if the witness' testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)).

During Brown's trial, Myres testified repeatedly and unequivocally that Brown was the shooter. That testimony, alone, is sufficient to prove Brown was the shooter. *Bryant*, 10 Va. App.

at 427.  Brown identifies nothing in the record that rendered Myres' testimony inherently incredible as a matter of law.  The bare fact that a witness may be biased does not render her testimony inherently incredible.  *Johnson*, 58 Va. App. at 315.  Moreover, "testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law."  *Kelley*, 69 Va. App. at 626.  Brown's arguments, in essence, ask this Court to reweigh the evidence and reach conclusions that the fact finder implicitly rejected by finding him guilty.  Given our deferential standard of review, we decline Brown's invitation to do so.

In sum, Myres' testimony identifying Brown as the shooter was competent, not inherently incredible, and sufficient to support Brown's convictions.  Accordingly, the trial court did not err by denying Brown's motions to strike and his motion to set aside the jury's guilty verdicts.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*